Filed 5/7/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DOE 3, FAMILY SERVICES ORGANIZATION, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br> Respondent; <br><br> JOHN ROE DZ 20 et al., <br><br> Real Parties in Interest. | H051868 <br> (Santa Clara <br> Super. Ct. No. 22CV408645) <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br><br> **NO CHANGE IN JUDGMENT** |

The real parties in interest's petition for rehearing is denied. The court orders that the opinion filed April 9, 2025, be modified as follows:

The fifth sentence of the first full paragraph on page 16 of the opinion shall be deleted and replaced with the following:

"Plaintiffs do not allege that Family Services engaged in negligent or intentional conduct separate from Dowell's conduct, which they allege is imputed to Family Services."

There is no change in the judgment.

_____
Greenwood, P. J.

_____
Grover, J.

_____
Danner, J.

Filed 4/9/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DOE 3, FAMILY SERVICES ORGANIZATION,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>JOHN ROE DZ 20 et al.,<br><br>    Real Parties in Interest. | H051868<br>(Santa Clara<br>Super. Ct. No. 22CV408645) |

In 2009, real parties in interest John Roe DZ 20, John Roe DZ 21, and John Roe DZ 22 (Plaintiffs) sued an employee of petitioner Doe 3, Family Services Organization (Family Services), setting forth causes of action related to alleged sexual assault they suffered in their childhood. The trial court dismissed the claims against the employee with prejudice under the then-applicable statute of limitations. Relying on the revival provision of Code of Civil Procedure section 340.1,[1] in 2022 Plaintiffs filed a complaint against Family Services based on the same allegations of childhood sexual assault.

---

[1] Undesignated statutory references are to the Code of Civil Procedure unless otherwise specified. Unless otherwise noted, all references to section 340.1 are to the version of the statute in effect at the time Plaintiffs filed their action in 2022. (Stats. 2019, ch. 861, § 1, eff. Jan. 1, 2020.) The Legislature has since enacted additional amendments to the statute that are not applicable to these proceedings. (Stats. 2022, ch. 444 (Assem. Bill No. 2959), § 1, eff. Jan. 1, 2023; Stats. 2023, ch. 655 (Assem. Bill No. 452), § 1, eff. Jan. 1, 2024.)

Family Services demurred to the complaint, contending that Plaintiffs' claims against Family Services could not be revived under section 340.1, subdivision (q), because they were derivative of the claims that were litigated to finality in the 2009 action. The trial court overruled the demurrer.

Family Services now petitions for a writ of mandate directing the trial court to vacate the order overruling the demurrer and to enter a new order sustaining the demurrer without leave to amend. Family Services contends that a claim for derivative liability against a principal was "litigated to finality" for purposes of section 340.1, subdivision (q), where a previous suit against an agent for the same damages on the same operative facts was dismissed with prejudice. We agree the claim, as stated in the operative complaint, is not revived under section 340.1, subdivision (q), and will issue the writ of mandate, directing the trial court to sustain the demurrer. We will afford Plaintiffs leave to amend their complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. 2009 Action

In 2009, Plaintiffs filed a complaint for damages, which they amended in 2010 (the 2009 action), naming as defendants: their stepfather, William Knox (the alleged perpetrator of the underlying abuse); Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints and Corporation of the President of the Church of Jesus Christ of Latter-Day Saints (referred to collectively in the complaint as the Mormon Church); National Boy Scouts of America Foundation; Pacific Skyline Council, Boy Scouts of America; and Edna M. Dowell, an individual.

Plaintiffs alleged that Dowell was hired or directed by the Mormon Church to provide therapy or counseling for Knox, Plaintiffs, and Plaintiffs' mother at their home. They further alleged that each named defendant, including Dowell, was an "employee, agent, and/or servant of the Mormon Church and/or was under their complete control and/or active supervision." Plaintiffs generally claimed that Knox, while acting as an

2

agent of the Mormon Church and the Boy Scouts of America, sexually abused them over the course of many years, both before and after marrying their mother. They contended that the Mormon Church and the Boy Scouts of America knew that Knox posed a danger to them at the time the abuse began in 1977. Plaintiffs themselves notified both entities of the abuse beginning in 1982. They reported the abuse to Bishop Tim Parker, Bishop Tim Allen, and Stake President Don Hull, none of whom reported the abuse to authorities.

Plaintiffs claimed the Mormon Church hired Dowell to provide counseling to their family during their adoption of a child in the 1980s. During the counseling, two of the plaintiffs notified Dowell of the abuse they were suffering at Knox's hands. Plaintiffs alleged that Dowell failed to report the abuse to the proper authorities, thus allowing the abuse to continue. Plaintiffs claimed that the Mormon Church continued to retain Dowell to counsel the family at the church's direction or control. They alleged that Dowell, Parker, Allen and Hull, while "acting under the agency, direction, and right of control of the Mormon Church and/or the Boy Scouts of America[,] ratified [Knox's abuse of Plaintiffs] by failing to disclose the abuse to the proper authorities or otherwise take affirmative steps to end the known, ongoing abuse. These Defendants' failure to repudiate these acts by reporting them to authorities or effectively ending them was an approval or ratification of [Knox's] acts through their silence. . . . Such ratification of these acts is imputed to the Mormon Church and Boy Scouts of America by virtue of their agency relationships with [Parker, Allen, Hull, and Dowell]."

Plaintiffs alleged three causes of action against Dowell, for negligence, negligence per se based on a failure to comply with mandatory reporting requirements, and constructive fraud. In 2011, the trial court sustained Dowell's demurrer to the operative complaint, without leave to amend.[2] In so doing, the trial court determined that the

---

[2] The pleadings Dowell filed in support of the demurrer are not included in the exhibits submitted by either party to these proceedings.

3

complaint was barred by the statute of limitations, as Plaintiffs failed to establish equitable estoppel, and failed to demonstrate that Dowell was a direct perpetrator subject to the extended time period established by the then-operative version of section 340.1.[3] The court dismissed the action against Dowell with prejudice.

### B. 2022 Action

The Legislature amended section 340.1 in 2019, allowing the revival of certain claims related to childhood sexual abuse that were otherwise time-barred but were not previously "litigated to finality." (§ 340.1, subd. (q).) In 2022, Plaintiffs filed a new complaint (the 2022 action), naming as defendants: Doe 1, Local Religious Unincorporated Association (referred to as "Defendant Ward" in the complaint); Doe 2, Regional Religious Unincorporated Association (referred to as "Defendant Stake" in the complaint); and Family Services. Plaintiffs alleged that Family Services "engaged professionals throughout California to assist members of local religious congregations with various domestic, emotional, psychological, and interpersonal matters, including Plaintiffs and their family and the congregation to which they belonged." As they did in the 2009 action, in the 2022 action Plaintiffs alleged they suffered sexual abuse at the hands of Knox beginning in 1977. They claimed that Defendant Ward and Defendant Stake employed Knox as lay clergy to "provide religious and pastoral services to members of their religious community, including Plaintiffs and Plaintiffs' family." Plaintiffs alleged that they notified Parker, Hull, and Allen of the abuse beginning in 1982. They described Parker and Allen as agents of the "Religious Defendants," a term

---

[3] At the time of the 2009 action, former section 340.1, subdivision (a), allowed an action for damages suffered due to childhood sexual abuse to commence within the latter of eight years of the plaintiff attaining majority or three years after the plaintiff discovered that the injury occurring after majority was caused by sexual abuse. (Stats. 2002, ch. 149, § 1.) However, under former section 340.1, subdivision (b), where the defendant was not the perpetrator of the alleged abuse, the action for liability had to be commenced before the plaintiff's 26th birthday except in limited circumstances not relevant here. (*Ibid*.)

they defined as including Defendant Ward, Defendant Stake, and Family Services. Plaintiffs claimed that they notified Dowell of the sexual abuse in approximately 1985, describing her as "a psychologist acting as a direct agent of Defendant Family Services and on behalf of all Religious Defendants (including Defendant Family Services), whose knowledge was as a matter of law imputed to all Religious Defendants. . . ." Dowell, "while acting in the scope of her agency for Religious Defendants," failed to report the abuse to the appropriate authorities.

In the 2022 action, Plaintiffs alleged four causes of action against Family Services: "negligence/failure to protect (religious context)," "negligent supervision/failure to warn (religious context)," "negligent hiring/retention (religious context)," and "sexual battery (religious context)." Family Services demurred to the complaint on the grounds that Plaintiffs' claims were barred by the applicable statute of limitations and could not be revived under section 340.1 because the claims were "previously litigated to finality and dismissed with prejudice."[4] They further claimed that allowing the revival of the claims would be "unconstitutional under the separation of powers doctrine." Family Services argued that the claims alleged in Plaintiffs' 2022 action were predicated on the same facts asserted in the 2009 action. Although Plaintiffs named different defendants in the 2009 and 2022 actions, Family Services alleged that "simply altering the names of the defendants listed in their complaint" did not serve to revive the claims under section 340.1, subdivision (q), as the new claims were based on the same operative facts, and Family Services' purported liability was "entirely dependent upon and derived from the liability of its employee, [Dowell], who was sued and dismissed with prejudice" in the prior lawsuit. Family Services contended that any effort to undo the finality of the court's prior decision would violate the separation of powers doctrine.

---

[4] Family Services demurred to five causes of action. However, they were not named as a defendant in the fifth cause of action alleged by Plaintiffs in the 2022 complaint.

In opposition to the demurrer, Plaintiffs argued that the legal authority relied on by Family Services did not support the contention that the dismissal of Dowell or other defendants from the 2009 action constituted final litigation of the claims alleged against Family Services in the 2022 action. Rather, Plaintiffs contended that Family Services was asking the trial court to apply the claim preclusion doctrine in a context where the requirements for such application had not been met. Plaintiffs argued that the dismissal of Dowell based on a statute of limitations defense did not satisfy the requirement under the claim preclusion doctrine for a final judgment on the merits. They further alleged that Family Services had not demonstrated that it was in privity with Dowell for purposes of the application of the doctrine. To the extent Family Services asked the trial court to interpret section 340.1 to create a new preclusion doctrine that did not require a final judgment on the merits or privity, Plaintiffs argued that such an interpretation would be "absurd given the expansive and remedial nature of [s]ection 340.1." They denied any constitutional infirmity if the trial court allowed the 2022 action to proceed against Family Services.

In its reply, Family Services argued that the derivative liability between itself and Dowell established privity necessary to determine that the dismissal of Dowell with prejudice in the 2009 action constituted litigation to finality of the identical claims raised against Family Services in the 2022 action. The only allegations against Family Services in the 2022 action derived from Dowell's conduct, which Dowell undertook as a "direct agent" of Family Services, as alleged by Plaintiffs. Family Services urged the trial court to adopt a fact-based definition of the word "claim" as used in the statute, and argued that doing so was consistent with claim preclusion principles. Family Services further contended that adopting a reading of the statute that allowed the action to proceed would violate separation of powers principles.

Following a hearing, the trial court overruled Family Services' demurrer. The trial court stated that "there is a controlling question of law as to which there are substantial

6

grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." (§ 166.1.)

Family Services timely petitioned this court for a writ of mandate, prohibition, or other appropriate relief. It thereafter sought a stay of the trial court proceedings. After receiving an informal response from Plaintiffs, this court granted Family Services' request to stay the trial court proceedings, and issued an order to show cause to the trial court why a peremptory writ should not issue directing the trial court to vacate its order overruling Plaintiffs' demurrer and enter a new order sustaining the demurrer without leave to amend. Plaintiffs filed a return, and Family Services a reply.

## II. DISCUSSION

Family Services raises a discrete legal question in its writ petition: "Whether a claim for derivative liability against a principal (Family Services) was 'litigated to finality' where a previous suit against the agent (Edna Dowell) for the same damages based on the same operative facts was dismissed with prejudice." We conclude that the answer is yes, and will direct the trial court to vacate its order overruling Plaintiffs' demurrer and sustain the demurrer with leave to amend.

### A. Availability of Writ Relief

"An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.)

In the instant case, writ review is warranted for both reasons. The petition raises the first-impression issue of whether the "claim for damages" based on derivative liability against a principal was "litigated to finality" under section 340.1, subdivision (q) when a previous suit against the agent for the same damages based on the same operative facts

7

was dismissed with prejudice. Resolution of this issue in Family Services' favor will result in a final disposition as to Family Services.

### B. *General Legal Principles*

" 'The overall goal of section 340.1 is to allow victims of childhood sexual abuse a longer time period in which to bring suit against their abusers." (*McVeigh v. Doe 1* (2006) 138 Cal.App.4th 898, 903; accord *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 (*Los Angeles*).) Under section 340.1, the time for commencement of Plaintiffs' instant action for damages suffered as a result of childhood sexual assault was "within 22 years of the date the plaintiff attains the age of majority or within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault, whichever period expires later, for any of the following actions: [¶] (1) An action against any person for committing an act of childhood sexual assault. [¶] (2) An action for liability against any person or entity who owed a duty of care to the plaintiff, if a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff. [¶] (3) An action for liability against any person or entity if an intentional act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff." (§ 340.1, subd. (a).)

Section 340.1, subdivision (q), revives any "claim for damages" described in section 340.1, subdivision (a), "that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired," allowing a plaintiff three years from January 1, 2020, to commence the claim.

"The 'ordinary standards of demurrer review still apply' even though this case 'arrived at the Court of Appeal by the unusual path of a writ petition challenging an order overruling a demurrer.' [Citation.]" (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398, fn. 3.) "The standard of review for an order overruling a demurrer is

8

de novo.  The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled.  [Citation.]  The court may also consider as grounds for a demurrer any matter that is judicially noticeable under Evidence Code sections 451 or 452.  (Code Civ. Proc., § 430.30, subd. (a).)" (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 (*Cryolife*), fn. omitted.)  We do not accept as true the pleader's deductions, contentions, or conclusions of law, as this court must decide questions of law independently.  (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 322 (*Dilbert*).)  "A general demurrer will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'  [Citation.]" (*Cryolife,* at p. 1152.)

To the extent the trial court's ruling on a demurrer presents a question of statutory interpretation, we will interpret the statute de novo as well.  (*Doe v. Marysville Joint Unified School Dist.* (2023) 89 Cal.App.5th 910, 915 (*Marysville*).)  Our task in interpreting a statute is to determine the Legislature's intent in order to effectuate the law's purpose, first by looking at the plain and commonsense meaning of the statutory language.  (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 169 (*North American Title*); *Marysville*, at pp. 915-916.)  We examine the language in the context of the statutory scheme as a whole to determine the law's scope and purpose, and to harmonize the various parts of the enactment.  (*North American Title*, at p. 169.)  If the language of the statute is ambiguous, we 'can look to legislative history [citation] and to rules or maxims of construction' to resolve the ambiguity.  [Citation.]" (*Marysville*, at p. 916.)

### C.  *The Plain Language of Section 340.1, subdivision (q) is Ambiguous*

The parties agree that Plaintiffs' action against Family Services cannot proceed absent application of the revival provision of section 340.1, subdivision (q).  Their dispute lies in interpretation of that provision, specifically what constitutes a "claim for

9

damages" that has been "litigated to finality." The statutory language does not include a definition of those terms. (§ 340.1, subd. (q).)

Generally, we start by giving the actual words of the statute their ordinary and usual meaning to determine if there exists an ambiguity in a statute. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) "If the statutory language is clear and unambiguous, then we need go no further. [Citation.] If, however, the language is susceptible to more than one reasonable interpretation, then we look to 'extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 (*Hoechst*).) We strive to "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

Although each party argues that the plain language of the statute supports its position on appeal, these arguments reveal that the language of section 340.1, subdivision (q), is "susceptible to more than one reasonable interpretation." (*Hoechst*, *supra*, 25 Cal. 4th at p. 519.) There exists an ambiguity regarding what the Legislature meant when it said that a "claim for damages" that had been "litigated to finality" could not be revived by section 340.1, subdivision (q).

We first easily resolve the issue of the meaning of the term "litigated to finality" as appellate courts have previously considered its significance in connection with prior claims that were terminated on the basis of statutes of limitation. In a prior version of section 340.1, the Legislature included language reviving claims that had not yet been " 'litigated to finality on the merits,' " and specifically provided that "[t]ermination of a prior action on the basis of the statute of limitations does not constitute a claim that has

10

been litigated to finality on the merits.'  ([Former] § 340.1, subd. (d)(1).)"  (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 175 (*Perez*); Stats. 2002, ch. 149, § 1.)

In *Perez*, the appellate court determined that "the Legislature violated the separation of powers doctrine when it amended section 340.1 to revive childhood sex abuse actions where a final judgment had been entered under the statute of limitations that previously existed."  (*Perez*, *supra*, 146 Cal.App.4th at p. 188.)  When it enacted the operative version of section 340.1 by passing Assembly Bill No. 218 (2019-2020 Reg. Sess.) (Assembly Bill 218), the Legislature removed the language referencing both final litigation "on the merits" and termination of prior litigation based on the statute of limitations.  (Stats. 2019, ch. 861, § 1.)  "[T]he Legislature had good reason to remove the language allowing revival of claims litigated to finality 'on the merits':  reopening a case litigated to finality would be unconstitutional."  (*Marysville*, *supra*, 89 Cal.App.5th at p. 917.)  Thus, a dismissal based on a statute of limitations defense constitutes final litigation for purposes of section 340.1, subdivision (q).

We next consider the meaning of the term "claim for damages" in section 340.1, subdivision (q), and whether it includes derivative claims, such as those raised by Plaintiffs against Family Services based on the conduct of Dowell, its employee.  This is a question of first impression as no appellate court has interpreted the statute.  Although we commence by examining the plain language of the statute, we conclude there is more than one reasonable interpretation of this phrase.

Family Services urges this court to adopt a construction of the phrase "claim for damages" based on the definition set forth in the Third Edition of Black's Law Dictionary, which defines "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court."  Although courts routinely consult dictionaries to determine the usual and ordinary meaning of a word (see *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1499), we are mindful that "[m]ultiple or broad meanings do not necessarily create ambiguity."  (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993)

5 Cal.4th 854, 868.) "The proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case." (*Ibid*.) The "reliance on common understanding of language is bedrock" but "equally important are the requirements of reasonableness and context." (*Id.* at p. 867.)

Plaintiffs contend applying the definition of claim proffered by Family Services, which they correctly note is taken from an older version of Black's Law Dictionary, ignores both the full phrase at issue—"claim for damages"—and subdivision (a) of section 340.1, which, in conjunction with subdivision (q), allows the revival of a plaintiff's claims against the person who committed the act of childhood sexual assault, as well as "against any person or entity" whose "wrongful," "negligent," or "intentional act" was a "legal cause of the childhood sexual assault" at issue in the action. (§ 340.1, subds. (a), (q).) They argue that they seek damages against Family Services based on the entity's separate negligent or intentional conduct, whereas the 2009 action sought damages based on Dowell's negligent or intentional conduct, suggesting those two are not one and the same. They contend that an interpretation of subdivision (q) focused only on "claim" rather than on the full phrase "claim for damages" would hamper the broader application of subdivision (a) of section 340.1. Instead, they suggest the more modern definition of claim supports a broader interpretation of the statute. (Black's Law Dict. (12th ed. 2024).) Ultimately, none of the definitions proffered by the parties resolve the present ambiguity concerning the Legislature's intent to include or exclude claims based on derivative liability.

Plaintiffs urge this court to interpret the language of section 340.1, subdivision (q) through the lens of the traditional doctrine of claim preclusion. "Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it

operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) Here, Plaintiffs allege that claim preclusion is not established, because the 2009 action against Dowell was not litigated between the same parties and did not result in a final judgment on the merits.

Family Services argues that an interpretation of section 340.1 precluding revival of a claim based on derivative liability is "consistent with claim preclusion principles. . . ." However, given the language of section 340.1, subdivision (q), it contends that the traditional requirement that a prior action be litigated "on the merits" does not apply.

In discussing the application of the claim preclusion doctrine to this court's interpretation of the plain language of section 340.1, subdivision (q), each party focuses on a different prong of the doctrine. In so doing, neither provides a satisfactory resolution to the ambiguity in the plain language of the statute. Family Services argues that a judgment against one defendant can have a preclusive effect against another defendant in privity with them as to the "same claim." (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 672 (*Cal Sierra*).) The Supreme Court has clarified that derivative liability—where "liability is imposed on one person [or entity] for the direct acts of another" (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 579)—establishes privity. "When a defendant's liability is entirely derivative from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one. [Citations.] The nature of derivative liability so closely aligns the separate defendants' interests that they are treated as identical parties. [Citation.] Derivative liability supporting preclusion has been found between a corporation and its employees [citations], a general contractor and subcontractors [citations], an association of securities dealers and member agents [citation], and among alleged coconspirators [citation]." (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 827-828; *Cal Sierra*, at p. 673; see *Bernhard v. Bank of America Nat. Trust & Savings Assn.* (1942) 19 Cal.2d 807, 812-813.) Applying the logic of claim

13

preclusion to the revival provision of section 340.1, subdivision (q), Family Services argues that a claim for damages based on derivative liability should not be revived.

Plaintiffs focus on the claim preclusion doctrinal requirement that the prior action be resolved by a final judgment "on the merits." There is no dispute that the termination of an action based on a statute of limitations defense is not an adjudication of the action "on the merits." (*Mid Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, 776-777.) But that does not resolve the question of whether the Legislature intended section 340.1, subdivision (q), which does not require a final adjudication on the merits, to apply to claims of derivative liability. Nor does the plain language of the statute preclude the application of the traditional doctrine of claim preclusion. Thus, we turn to extrinsic aids to determine the proper construction of section 340.1, subdivision (q), vis-à-vis a claim for damages based on derivative liability.

### D. *The Legislative History Supports a Construction of Section 340.1, subdivision (q) that Bars Revival of the Claim*

The legislative history of the applicable version of section 340.1, subdivision (q)[5] makes clear that the Legislature extended the statute of limitations in recognition of "the uniqueness of childhood sexual abuse and the difficulty that younger victims may have fully understanding the abuse, coming to terms with what has occurred, and then coming forward in a timely fashion." (Assem. Com. on Judiciary, Analysis of Assem. Bill No.

---

[5] When we issued the order to show cause, we granted Family Services' request for judicial notice of the Assembly Committee on Judiciary's Analysis of Assembly Bill No. 218 (2019-2020 Reg. Sess.). In support of their return to the petition for writ of mandate, Plaintiffs requested that this court take judicial notice of 20 exhibits which they describe as "legislative history materials and scholarly articles." They discuss only one of the exhibits in the return – the Assembly Committee on Judiciary's third reading analysis of Assembly Bill No. 218. Plaintiffs' request for judicial notice is granted as to Exhibit 1, and denied as to Exhibits 2-20. The failure to discuss the exhibits in their pleadings demonstrates that Exhibits 2-20 were not relevant to the dispositive issue in the proceeding. (See *Los Angeles*, *supra*, 42 Cal.4th at p. 544, fn. 4; *Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 745.)

14

218 (2019-2020 Reg. Sess.) Mar. 12, 2019, p. 1.)  "In an effort to allow more victims of childhood sexual assault to be compensated for their injuries and, to help prevent future assaults by raising the costs for this abuse, this bill extends the civil statute of limitations for childhood sexual assault by 14 years, revives old claims for three years, and eliminates existing limitations against public institutions." (*Id.* at pp. 3-4.)  The supporters of the bill believed "the psychological injuries from sexual assault emerge later in life and that victims routinely need decades to reach the psychological place where they can come forward.  If the statute of limitations is too short, then there can be no justice and more children will be abused." (*Id.* at pp. 2, 4-5.)  The sponsor of the bill argued, "It is time for the law to recognize what we all now know – that it can take decades before some survivors are capable of coming forward.  Children being assaulted today may not be ready to come forward until decades in the future."  (Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.), as introduced Jan. 16, 2019, p. 2.)  The Legislature recognized that, by the time victims understand the abuse they had suffered and are willing to come forward, "they often find that the civil statute of limitations has already expired."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) Mar. 12, 2019, p. 4.)

Nothing in the legislative history of section 340.1, subdivision (q), reflects a legislative intent to revive claims for damages based solely on derivative liability if the first action had been litigated to finality.  The Legislature's primary concern in extending the statute of limitations was to ensure that victims of childhood sexual assault had sufficient time to process and understand the harm they had suffered, and to seek damages from the perpetrators of that harm.  The Legislature recognized that the revival provision of section 340.1 would "revive most, but not all, old claims."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) Mar. 12, 2019, p. 8, bold and italics omitted.)  The bill was designed to "change the law to provide more

15

protections for victims who come forward later in life," but only revived cases that had not been "litigated to finality."  (*Id*. at pp. 7, 8.)

Here, Plaintiffs brought their claims based on Dowell's conduct in the 2009 action. While it is unfortunate that the Legislature had not yet recognized the need for a more extended statute of limitations at that time, the fact remains that the statute of limitations in effect at that time barred the action against Dowell.  Now, Plaintiffs seek to take advantage of the Legislature's subsequent recognition that the unique nature of childhood sexual assault claims requires a longer statute of limitations.  However, they do so based not on new factual contentions concerning Family Services' conduct, but solely on the conduct of Dowell, which they allege is attributable to Family Services as their employee.  Plaintiffs do not allege that Family Services engaged in negligent or intentional conduct separate from Dowell's conduct, which they allege is "imputed by law" to Family Services."[6]  They set forth contentions, deductions, and conclusions without stating facts in support demonstrating that Family Services' potential liability is based on conduct other than that undertaken by Dowell as alleged in the 2009 action.  We do not accept those contentions as true without factual support. (*Dilbert*, *supra*, 101 Cal.App.5th at p. 322.)

Plaintiffs' complaint does not implicate the policy concerns that caused the Legislature to extend the statute of limitations through Assembly Bill 218.  They did not discover the sexual assault just prior to filing the 2022 action.  Nor did they first comprehend the harm done to them shortly before filing that action.  Plaintiffs rely on the same factual allegations that were litigated to finality in the 2009 action against Dowell. Plaintiffs do not allege any additional facts of liability against Family Services.  Despite

_____

[6] Plaintiffs suggest that Family Services will, in future proceedings, "dispute the fact that Edna Dowell was ever its agent."  For purposes of this appeal, Family Services has effectively admitted agency in seeking to dismiss the complaint based on derivative liability.  We will not speculate as to what arguments Family Services might make in future trial court proceedings.

contentions to the contrary, the only facts alleged in the complaint that support liability against Family Services are wholly derived from the conduct of Dowell.

Given the statute's bar to revival of a claim for damages that had previously been litigated to finality, without a requirement that the final litigation was "on the merits," we agree with Family Services that a construction of section 340.1, subdivision (q) barring Plaintiffs' claims against Family Services is consistent with claim preclusion principles. Although the traditional doctrine of claim preclusion does require a judgment on the merits, in section 340.1, the Legislature allowed for the preclusion of claims based on finality without the additional requirement that the litigation resolved the merits of the claims. The sole factual basis alleged by Plaintiffs for Family Services' liability is the conduct of Dowell. Derivative liability establishes privity between Dowell and Family Services. (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 827-828.) Because the claim for damages asserted in the 2022 action against Family Services is the same claim that was litigated to finality against Dowell in the 2009 action, it is not subject to revival under section 340.1, subdivision (q).

Moreover, such a construction comports with the constitutional concerns addressed in *Perez* and *Marysville*. In *Perez*, the appellate court found that amendments to the statute reviving claims that had already been litigated to finality based on the then-existing statute of limitations violated the separation of powers doctrine. (*Perez*, *supra*, 146 Cal.App.4th at p. 188.) Although the *Perez* court recognized the Legislature's good intentions in amending the statute as it did, it nevertheless found that "the separation of powers doctrine 'is violated when an individual final judgment is legislatively rescinded for even the very best of reasons, such as the legislature's genuine conviction (supported by all the law professors in the land) that the judgment was wrong; and it is violated 40 times over when 40 final judgments are legislatively dissolved.' [Citation.] While it might seem a far-fetched notion, if the Legislature has the power to undo the class of judgments covered by section 340.1. . ., then it would also be free to revive any cause of

17

action, no matter how old, that had been dismissed under a previously existing statute of limitations.  The constitution does not permit such an extension of legislative power." (*Perez*, at p. 189.)  "Reading the statute to permit revival of any fully adjudicated claims, even those not decided on the merits, would give rise to the same constitutional problem that the amended statute resolved." (*Marysville*, *supra*, 89 Cal.App.5th at p. 918.)

For these reasons, we hold that the claim for derivative liability against Family Services was "litigated to finality" where the 2009 action against Dowell for the same damages based on the same operative facts was dismissed with prejudice.

### E.  Liability of Family Services Based on Conduct of Others

In their return, Plaintiffs for the first time argue that Family Services is liable to them not only based on Dowell's conduct, but also "due to the completely independent negligence of two of its other agents [Parker and Allen]. . . ."  Family Services contends the failure to raise this argument in the trial court forfeits the argument in this court.  It is generally true that issues not raised in the trial court cannot be raised for the first time in seeking relief from the appellate court.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)  However, in reviewing an order ruling on a demurrer, the appellate court considers the operative complaint "de novo to determine whether it alleges facts sufficient to state a cause of action *under any legal theory*.  [Citation.]" (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162, italics added.)  " '[T]he "any possible legal theory" standard encompasses a legal theory presented for the first time [on appeal].'  [Citation.]" (*MACH-1 RSMH, LLC v. Darras* (2024) 103 Cal.App.5th 1288, 1299; *2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 853, fn. 7.)

Considering the issue de novo, we conclude the allegations in the complaint are not sufficient to state a cause of action based on liability of Parker and Allen as agents of Family Services.  We disregard contentions, deductions, and legal conclusions in reviewing a demurrer.  (*Dilbert*, *supra*, 101 Cal.App.5th at p. 322.)  " 'Agency is the relationship which results from the manifestation of consent by one person to another that

18

the other shall act on his behalf and subject to his control, and consent by the other so to act.' [Citation.]" (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592; accord *Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1114.) Here, Plaintiffs "have not alleged any facts to support a nonspeculative inference that" Parker and Allen acted as agents of Family Services; there are no facts set forth in the 2022 complaint showing that Family Services controlled or consented to any of Parker's or Allen's conduct. (*Amiodarone Cases*, at p. 1114.)

### F. Leave to Amend

In their return, Plaintiffs ask this court to grant leave to amend their complaint in the event we determine the demurrer should be sustained, based on the allegation that Family Services is liable not only based on Dowell's conduct, but through the actions of others as well. It is appropriate to grant leave to amend "where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.] If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment. [Citations.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)

Plaintiffs have not had an opportunity to amend their complaint to demonstrate that causes of action against Family Services based on the conduct of people besides Dowell can be revived under section 340.1, subdivision (q). While Plaintiffs have yet to advance a successful argument in that regard, the 2022 complaint does not on its face foreclose any reasonable possibility of amendment.

### III. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order overruling the demurrer of defendant Doe 3, Family Services Organization, and to enter a new order sustaining the demurrer with leave to amend. Upon issuance of the

19

remittitur, the temporary stay order is vacated.  Each party is to bear its own costs in this original proceeding.

_____
               Greenwood, P. J.

WE CONCUR:

_____
    Grover, J.

_____
    Danner, J.

H051868 Doe 3, Family Services Organization v. Superior Court

Trial Court:                                  Santa Clara County Superior Court
                                              Superior Court No.: 22CV408645

Trial Judge:                                  The Honorable Socrates Peter Manoukian


Attorney for Petitioner                       Scott David Joiner
Doe 3, Family Services Organization:          Ward A. Penfold
                                              Latham & Watkins LLP



Attorney for Real Parties in Interest         Irwin Myron Zalkin
JOHN ROE DZ 20, et al.:                       Devin Miles Storey
                                              Zalkin Law Firm P.C.

                                              Gilion Claire Dumas
                                              Dumas & Vaugh LLC

H051868
Doe 3, Family Services Organization v. Superior Court